**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **GEORGE BERNARD,** | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **Case No. 4:15-cv-00734** |
| | § | |
| **CITY OF HOUSTON, HOUSTON** | § | |
| **FERDINAND RODRIGUEZ, JR.,** | § | |
| **EDUARDO MEDRANO,** | § | |
| **GERALD GOINES, JR.,** | § | |
| **CIRO OLIVARES,** | § | |
| **WILLIAM DAVIS,** | § | |
| **SHANTA MORTON,** | § | |
| **STEVEN BRYANT,** | § | |
| **JOHN DOE 1-3** | § | |
| ***Defendants.*** | § | |

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**Page(s)**


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... iii

EXHIBITS ..... vii

I. NATURE AND STAGE OF PROCEEDING ..... 1

II. FACTUAL BACKGROUND ..... 2

III. ISSUES PRESENTED ..... 4

IV. ARGUMENT SUMMARY ..... 5

V. ARGUMENT ..... 6

A. Plaintiffs have not and cannot overcome the defense of qualified immunity. ...................... 6

B. Bernard has not established a claim of excessive force under 42 U.S.C. § 1983. ................ 8

C. Bernard has not established a claim of False Arrest under 42 U.S.C. § 1983. ................... 10

D. Bernard and Gonsoulin have not established a claim of false imprisonment. ................... 11

E. Plaintiffs have failed to establish a Due Process/Brady Violation. ..................................... 12

F. Plaintiffs cannot show any conspiracy to commit constitutional violations. ...................... 13

G. The Plaintiffs cannot show a failure by other officers to intervene. .................................... 14

H. Plaintiffs cannot establish their state and common law claims. .......................................... 15

I. Plaintiffs' have been given an adequate opportunity to identify any additional officers (unidentified officers) and have failed to name specific officers or set forth specific actions taken by any additional officers which support any claim upon which relief can be granted. ........................................................................................................................ 16

J. Claims against Houston under the Texas Tort Claims Act fail as a matter of law. ............ 17

K. Plaintiffs state law claims against Houston for negligence, respondent superior, negligent hiring, retention, supervision and control are all barred by governmental immunity. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 693-94, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). ............................................................................................................................ 20

VI. CONCLUSION AND PRAYER ........................................................................................ 25

CERTIFICATE OF SERVICE ................................................................................................. 26

## TABLE OF AUTHORITIES

### Cases

*Beck v. Texas State Bd. of Dental Exam'rs*, 204 F.3d 629 (5th Cir. 2000).................................... 6

*Benningfield v. City of Houston*, 157 F.3d 369 (5th Cir. 1998)................................................... 14

*Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997) ........................ 20, 21

*Bolton v. City of Dallas*, 541 F.3d 545 (5th Cir. 2008)................................................................ 21

*Brady v. Maryland*, 373 U.S. 83 S.Ct. 1194, 10 L.Ed2d 215 (U.S. 1963) ............................. 12, 13

*Brumfield v. Hollins,* 551 F.3d 322 (5th Cir.2008)........................................................................ 7

*Burge v. St. Tammany Parish*, 336 F.3d 363 (5th Cir. 2003) ....................................................... 24

*Carnaby v. City of Houston*, 636 F.3d 183 (5th Cir. 2011) ............................................................ 9

*Celotex v. Catrett,* 477 U.S. 317 (1986) .......................................................................................... 5

*City of Amarillo v. Martin*, 971 S.W.2d 426 (Tex.1998)....................................................... 17, 20

*City of Canton v. Harris*, 489 U.S. 378 (1989)............................................................................. 21

*City of Houston v. Torres*, 621 S.W.2d 588 (Tex. 1981)............................................................. 19

*City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex. 1994)...................................................... 15

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).................................................................... 23

*Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986)......................................................................... 25

*Cousin v. Small*, 325 F.3d 627 (5th Cir. 2003) ................................................................................ 6

*Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273 (5th Cir. 2002) ............................................. 6

*Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814 (Tex. 2005)........................................................ 16

*Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, at 340 (Tex.), cert. denied, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998) ...................................... 18

*Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000)........................................... 9

*Graham v. Connor*, 490 U.S. 386 (U.S. 1989) .......................................................................... 9

*Hare v. City of Corinth*, 135 F.3d 320 (5th Cir.1998) ........................................................ 7, 15

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .............................................................................. 6

*Harris County v. Ochoa*, 881 S.W.2d 884 (Tex. App.–Houston [14th Dist.] 1994, writ denied . 16

*Harris v. Kuba*, 486 F.3d 1010 (7th Cir. 2007) ........................................................................ 13

*Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007) ................................................................... 6

*Hill v. Carroll Cnty.*, 587 F.3d 230 (5th Cir. 2009)..................................................................... 7

*Hilliard v. Ferguson*, 30 F.3d 649 (5th Cir. 1994) .................................................................... 14

*Holland v. City of Houston*, 41 F. Supp. 2d 678 (S.D. Tex. 1999).......................................... 19

*James v. Harris County*, 577 F.3d 612 (5th Cir. 2009) ............................................................ 21

*Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293 (5th Cir. 2004) (citations omitted)............................................................................................................ 24

*Kerrville State Hosp. v. Clark*, 923 S.W.2d 582 (Tex.1996)..................................................... 18

*Kersey v. Wilson*, 69 S.W.3d 794 (Tex. App. Fort Worth 2002)............................................... 15

*Kovacic v. Villarreal*, 628 F.3d 209 (5th Cir. 2010)..................................................................... 8

*Mace v. City of Palestine*, 333 F.3d 621 (5th Cir. 2003) ............................................................ 9

*McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir.2002) .................................................. 6

*Medrano v. City of Pearsall*, 989 S.W.2d 141 (Tex. App.–San Antonio 1999, no pet.).............. 19

*Milam v. City of San Antonio*, 113 F. App'x. 622 (5th Cir. 2004) ............................................. 24

*Monell v. Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).... 5, 20, 21

*Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911 (5th Cir. 1952) ............................ 14

*Ontiveros v. City of Rosenberg*, 564 F.3d 379 (5th Cir. 2009) ........................................................ 7

*Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808 (2009) ..................................................... 7

*Pembauer v. City of Cincinnati*, 475 U.S. 469 (1986) ................................................................. 24

*Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002) ...................................................... 20, 21

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) ................................................ 21, 25

*Plemons v. Amos*, 306 Fed. Appx. 160 (2009) ............................................................................ 12

*Randall v. Prince George's Cty.*, 302 F.3d 188 (4th Cir. 2002) .................................................. 14

*Riggs v. City of Pearland*, 177 F.R.D. 395, 406 (S.D.Tex.1997) ................................................ 18

*Rockwell v. Brown*, 664 F.3d 985 (5th Cir. 2011) ........................................................................ 7

*Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) ........................................................................... 7

*State Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575 (Tex. 2001) .................................................. 19

*Swilley v. City of Houston*, 457 F. App'x 400 (5th Cir. 2012) ..................................................... 14

*Tarver v. City of Edna*, 410 F.3d 745 (5th Cir. 2005) ..................................................................... 7

*Tennessee v. Garner*, 471 U.S. 1 (1985) ....................................................................................... 9

*Texas Dep't of Corrections v. Herring*, 513 S.W.2d 6 (Tex.1974) .............................................. 18

*Thomas v. City of Dallas*, 175 F.3d 358 (5th Cir. 1999) ................................................................. 6

*Tolan v. Cotton*, 713 F.3d 299 (5th Cir. 2013) ............................................................................... 7

*United States v. Cantu*, 230 F.3d 148 (5th Cir. 2000) .................................................................... 2

*United States v. Fernandez*, 559 F.3d 303, (5th Cir.), cert. denied, --- U.S. ----, 129 S.Ct. 2783, 174 L.Ed.2d 273 (2009) ........................................................................................................ 13

*United States v. Infante*, 404 F.3d 376 (5th Cir.2005) .................................................................. 13

*Weiland v. Palm Beach County Sheriff's Office,* 792 F.3d 1313 (11th Cir. 2015) ........................... 2

*Whatley v. Philo,*817 F.2d 19 (5th Cir. 1987) ........ 6

*Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013) ........ 14

*Zepeda v. Sizemore*, 2013 WL 4677964, at *6-7 (W.D. Tex. Aug. 30, 2013) ........ 16

**Other Authorities**

42 U.S.C. § 1983 ........ passim

42 U.S.C. § 1985 ........ 14

FED. R. CIV. P. 56 ........ 5

FED. R. CIV. P. 56(c) ........ 1

FED. R. CIV. P. 4 ........ 17

FED. R. CIV. P. 4(m) ........ 17

TEX. CIV. PRAC. & REM. CODE § 101.057 ........ 19

TEX. CIV. PRAC. & REM. CODE § 101.057(2) ........ 20

TEX. CIV. PRAC. & REM. CODE § 101.101(a) ........ 18

TEX. CIV. PRAC. & REM. CODE 101.101(b) ........ 18

CHARTER OF THE CITY OF HOUS. Art. IX, § 11, at 40 (effective 1905) ........ 18

## EXHIBITS

| | |
|---|---|
| Exhibit A | Search and Arrest Warrant |
| Exhibit B | Affidavit for Search and Arrest Warrant |
| Exhibit C | Sworn statement from Officer Rodriguez |
| Exhibit D | Affidavit from Sgt. William Davis |
| Exhibit E | Supplemental Police Report by Narcotics Squad 15 |
| Exhibit F | Deposition of George Bernard |
| Exhibit G | Information on Possession Charge |
| Exhibit H | Deposition of Elizabeth Gonsoulin |
| Exhibit I | Charter of the City of Hous. Art. IX, § 11, at 40 (effective 1905) |
| Exhibit J | Officer Rodriguez's training record |
| Exhibit K | Officer Rodriquez's Complaint History |

**TO THE HONORABLE JUDGE GRAY H. MILLER:**

1. Rule 56(c) of the Fed. R. Civ. Proc. allows the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Individual Defendant Officers Ferdinand Rodriguez, Jr. ("Rodriguez"), Eduardo Medrano ("Medrano"), Gerald Goines, Jr. ("Goines"), Ciro Olivares ("Olivares"), Shanta Morton ("Morton"), Steven Bryant ("Bryant"), Sergeant William Davis ("Davis"), unidentified Officers John Doe 1-3 ("unidentified officers"), and the City of Houston ("Houston" or "HPD"), move for Summary Judgment upon the basis that they are entitled to qualified immunity and because there is no genuine issue as to any material fact. Therefore, Defendants are entitled to judgment as a matter of law.

## I. NATURE AND STAGE OF PROCEEDING

2. This case is styled as an action for money damages for wrongful conduct of the individual Defendants and Houston based in part on asserted violations of rights secured to Plaintiffs under the Constitution and laws of the United States of America and 42 U.S.C. § 1983. (Plaintiffs' Third Amended Original Complaint, ECF 28, ¶ 1) In essence it is a civil-rights lawsuit arising from the execution of a narcotics search warrant which resulted in a gunshot wound to George Bernard ("Bernard") and the detention of Elizabeth Gonsoulin ("Gonsoulin"). Plaintiff's Third Amended Original Complaint employs "shotgun pleadings" with thirteen counts, each count adopting the allegations of all preceding counts without identifying which factual allegations relate to each count. In addition, the Third Amended Original Complaint asserts multiple claims against multiple defendants without specifying which of the defendants

are responsible for which acts or omissions, or which of the defendants the claim is brought against. *See, Weiland v. Palm Beach County Sheriff's Office,* 792 F.3d 1313, 1320-1323 (11th Cir. 2015).

## II. FACTUAL BACKGROUND

3. On Tuesday, March 19, 2013, at approximately 8:20 pm, a seven member team of officers assigned to the Narcotics Division Squad 13 of the Houston Police Department executed a "no-knock"[1] search warrant at 6725 Sherwood Drive in southeast Houston. See the Search and Arrest Warrant, **Exhibit A**, and the Affidavit for Search and Arrest Warrant, **Exhibit B**.

4. Officer Rodriguez was the first officer to make entry. Upon entry officers observed two elderly individuals sitting in the living room. These individuals were later identified as Elton Gonsoulin and Elizabeth Gonsoulin. These individuals complied with the officers' instructions to remain still and keep their hands visible. See **Exhibit C**, a sworn statement from Officer Rodriguez.

5. Plaintiff George Bernard was observed running from the living room area, through a dining room toward a door to another room. While moving away with his back turned to the officers, Bernard was observed to be grasping his waistband. Bernard failed to comply with the officers' instructions to freeze and show his hands. When Bernard suddenly turned toward Officer Rodriguez and simultaneously moved his hands from his waistband in a fast movement

[1] In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence would be dangerous or futile, or would inhibit the effective investigation of the crime by allowing the destruction of evidence. *United States v. Cantu*, 230 F.3d 148 (5th Cir. 2000). In this case the affidavit supporting the warrant justified the request for a "no-knock" warrant on the basis that a semi-auto hand gun had been observed in the home. The narcotics search warrant authorized the officers to dispense with the usual requirement that officers knock and announce their purpose before entering the home.

as if he was pulling a weapon, Officer Rodriguez perceived a threat to his life and fired one shot, striking Bernard in the abdomen. **Exhibit C.**

6. Bernard fell through the doorway into a room later identified as a kitchen. As officers followed they determined Bernard was unarmed.[2] After officers cleared the entire home, Bernard was searched and provided with tactical first aid by Officer Medrano. Officers requested a Houston Fire Department ambulance at the scene. See **Exhibit D**, an affidavit from Sergeant William Davis.

7. A young woman came out of a bedroom and attempted to enter a bathroom where she was detained and searched by officers. She was later identified as Aneshai Neal, Ms. Gonsoulin's granddaughter and Mr. Bernard's niece.

8. All of the occupants of the home were escorted outside and placed in different patrol vehicles. Since the home was now being treated as a crime scene, the individual defendants turned the scene over to other Houston Police Officers and had no further contact with the occupants. The search of the home was conducted by narcotics squad 15 under the supervision of Sgt. Yencha. The investigation was turned over to members of the Houston Police Departments' Homicide Division. **Exhibit D**.

9. During the subsequent search of the home members of narcotics squad 15 found 81.07 grams of phencyclidine (PCP) and 1.02 grams of marijuana. Officers also found a shotgun and a semi-auto handgun in the home. See **Exhibit E**, Supplemental Police Report by Narcotics Squad 15.

[2] There was a BB gun found in the kitchen which was a replica of a 45 automatic handgun.

10. Bernard was transported by the Houston Fire Department to Ben Taub hospital for emergency treatment. Because of his injuries he was never placed under arrest or taken into physical custody. See **Exhibit F**, Deposition of George Bernard page 51, line 23 thru page 52, line 3, and page 54 line 25 thru page 57 line 4.

11. Mr. and Mrs. Gonsoulin and Aneshai Neal were detained as material witnesses. While the search was being conducted they were not allowed back into the home. They were subsequently asked to come to Houston Police Headquarters where they provided statements to Homicide investigators.

12. Subsequent to the incident, the case management officer took the police and laboratory reports to the Harris County District Attorneys' Office and a warrant was authorized charging Bernard with Possession with Intent to Deliver a Controlled Substance. He posted a bond while still receiving treatment at the hospital and was never incarcerated. The Harris County District Attorney subsequently elected to dismiss the charges against Bernard.

13. On February 10, 2014, Bernard was stopped and detained by Houston Police Officers as part of a narcotics investigation while leaving the scene of an area under surveillance for drug-related activity. He was released after a search of his vehicle failed to locate any drugs.

## III. ISSUES PRESENTED

1. Whether Officer Rodriguez is entitled to qualified immunity?

2. Whether the Plaintiffs' stated a claim against any of the remaining named individuals or the unidentified officers?

3. Whether the remaining named individuals or the unidentified officers are entitled to qualified immunity?

4. Whether the Plaintiffs' have pled a viable claim under 42 U.S.C. § 1983?

5. Whether the Plaintiff can establish a claim of municipal liability under 42 U.S.C. § 1983?

6. Whether the Plaintiff's have pled viable claims under state law?

14. Summary judgment is warranted where a party establishes that there is no genuine dispute about any material fact and the law entitles the party to judgment. FED. R. CIV. P. 56; *see also Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986).

## IV. ARGUMENT SUMMARY

A. Plaintiffs have not and cannot overcome the defense of qualified immunity;

B. Bernard has not established a claim of excessive force under 42 U.S.C. § 1983;

C. Bernard has not established a claim of False Arrest under 42 U.S.C. § 1983;

D. Bernard and Gonsoulin have not established a claim of false imprisonment;

E. Bernard has failed to establish a Due Process/Brady Violation;

F. Plaintiffs cannot show any conspiracy to commit constitutional violations;

G. The Plaintiffs cannot show a failure by other officers to intervene;

H. Plaintiffs cannot establish their state and common law claims;

I. The Plaintiffs claims under the Texas Tort Claims Act fail as a matter of law;

J. Plaintiffs' have been given an adequate opportunity to identify any additional officers (unidentified officers) and have failed to name specific officers or set forth specific actions taken by any additional officers which support any claim upon which relief can be granted; and

K. Plaintiffs state law claims against Houston for negligence, respondent superior, negligent hiring, retention, supervision and control are all barred by governmental immunity. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 693-94, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

## V. ARGUMENT

### A. Plaintiffs have not and cannot overcome the defense of qualified immunity.

15. Qualified immunity promotes the necessary, effective, and efficient performance of governmental duties by shielding government officials from civil liability for damages when they perform discretional functions under color of state law. *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 284 (5th Cir. 2002), *see Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982). In a civil rights action, a defendant, moving for summary judgment based on qualified immunity, need only plead in good faith that he is entitled to qualified immunity. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). The plaintiff bears the burden to rebut the applicability of qualified immunity. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002). In a motion for summary judgment which asserts the affirmative defense of qualified immunity, "'[t]he moving party is not required to meet its summary judgment burden for a claim of immunity. It is sufficient that the movant in good faith pleads that it is entitled to absolute or qualified immunity.' *Beck v. Texas State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000). 'Once the [movant] *asserts* this affirmative defense, the burden *shifts* to the plaintiff to rebut it.' *Id.* at 633-34 (quoting *Whatley v. Philo*,817 F.2d 19, 20 (5th Cir. 1987)) (internal quotation marks omitted)." *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003); *Hathaway*, 507 F.3d at 319.

16. To overcome an assertion of qualified immunity, plaintiffs must show that defendant's conduct was objectively unreasonable in light of the legal rules clearly established at the time of their actions. *Thomas v. City of Dallas*, 175 F.3d 358, 363-64 (5th Cir. 1999). Plaintiffs have the burden to rebut it by presenting more than "mere allegations," but less than "absolute proof."

*Ontiveros v. City of Rosenberg*, 564 F.3d 379, 383 (5th Cir. 2009). Indeed, plaintiffs must file a short and plain statement of their complaint, a statement that rests on more than conclusions alone. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).

17. Courts apply a two-step analysis to determine whether a defendant is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009). To abrogate a public official's right to qualified immunity, plaintiff must show: first, the official's conduct violated a constitutional or statutory right; and second, the official's "actions [constituted] objectively unreasonable [conduct] in [the] light of clearly established law at the time of the conduct in question." *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir.2008); *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005).

18. For an excessive-force claim, plaintiff clears the first prong of the qualified-immunity analysis by showing a genuine dispute of material fact for whether plaintiff sustained; "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was clearly unreasonable. *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)(quoting *Hill v. Carroll Cnty.*, 587 F.3d 230, 234 (5th Cir. 2009). For the second prong the plaintiff must similarly show a genuine dispute of material fact for two distinct, but intertwined, elements. "The second prong of the qualified immunity test is whether the allegedly violated constitutional rights were *clearly established at the time of the incident;* and, if so, whether the [defendant's conduct] was *objectively unreasonable* in light of that then clearly established law." *Tolan v. Cotton,* 713 F.3d 299, 304-05 (5th Cir. 2013)(quoting *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir.1998)(first emphasis in original)(second emphasis added). The sequence of analysis is immaterial, *Tolan* 713 F.3d at 305; *Pearson v. Callahan,* 555 U.S.

223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); qualified immunity may be granted without deciding the first prong if plaintiff fails to satisfy the second, *Kovacic v. Villarreal,* 628 F.3d 209, 213 (5th Cir. 2010).

19. The shotgun pleadings in Plaintiffs' Third Original Complaint and the facts in this case do not support the allegations that the identified defendants committed any act which deprived the Plaintiffs of any constitutional right. Only two paragraphs make reference to acts performed by Officer Rodriguez as constituting the use of excessive force. ECF 28, ¶¶ 11 and, 13. The remaining individual defendants are merely alleged to have been members of the team that executed the narcotics search warrant on March 19, 2013. ECF 28, ¶ 12. Elsewhere, throughout the complaint Plaintiffs make conclusory allegations of actions been taken by "Defendant Officers."[3]

20. Plaintiffs have failed to establish any factual basis for their claims against Officers Medrano, Goines, Olivares, Morton, Bryant or Sergeant Davis.

**B. Bernard has not established a claim of excessive force under 42 U.S.C. § 1983.**

21. The primary claim in this civil action is Bernard's claim that Officer Rodriguez used excessive force during the execution of the narcotics search warrant. Bernard is the only Plaintiff alleging an excessive force claim under 42 U.S.C. § 1983. ECF 28, ¶¶ 29-34. No other officer is identified and alleged to have used excessive force against Bernard. The use of deadly force is subject to the Fourth Amendment's reasonableness requirement. *Tennessee v. Garner*, 471 U.S.

---

[3] Plaintiffs' Third Amended Original Complaint contains 41 paragraphs with references to "Defendants" or "Defendant Officers". Nowhere in the complaint is any specific action attributed to any of the individual defendants. Despite having the opportunity to identify any additional officers from the reports included in Defendants' initial disclosures, Plaintiffs have not made any attempt to identify which individuals they complain committed any specific act.

1, 7 (1985). "In the Fifth Circuit, to succeed on an excessive force claim, the plaintiff bears the burden of showing: (1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). "The '[u]se of deadly force is not unreasonable when an officer would have reason to believe the suspect poses a threat of serious harm to the officer or others." *Carnaby v. City of Houston,* 636 F.3d 183, 188 (5th Cir. 2011) (quoting *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396 (U.S. 1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

22. The execution of a narcotics search warrant is obviously a very high risk situation where an officer must make split second decisions about the amount of force that is necessary. Officer Rodriguez and other officers reported that Bernard failed to comply with instructions to freeze and show his hands. **Exhibit C**. Officer Rodriguez never saw a gun but stated he observed Bernard reaching into his waistband and suddenly turning and moving his hands from his waistband in a very fast movement as if he was pulling a weapon. Rodriguez felt he was in immediate danger and reacted by firing one shot at Bernard. **Exhibit C.** Even Bernard repeatedly

admits that everything happened very quickly. **Exhibit** F, page 28, line 19 thru page 31, line 12. No additional force was used when Bernard was found to be unarmed. After a quick search Bernard was promptly provided with medical attention and an ambulance was requested.

23. Bernard's claim about being stopped, detained and searched almost a year later on February 10, 2014 also fails to establish a claim for excessive use of force. There is no allegation of any injury and the search of a suspect in a narcotics investigation is not excessive action given the officers right to protect themselves during an investigative stop. Bernard does not allege Officer Rodriguez conducted the search on February 10, 2014. The complaint does not identify the officer alleged to have used excessive force. Bernard was released when no narcotics were found in his vehicle.

**C. Bernard has not established a claim of False Arrest under 42 U.S.C. § 1983**.

24. Bernard was shot by a police officer during the execution of a narcotics search warrant when he failed to comply with officers' instructions and made movements that an officer interpreted as presenting an immediate threat. Plaintiffs make no attempt to challenge the validity the narcotics search warrant or to the veracity of the supporting affidavit. Officers were not attempting to arrest Bernard at the time of his injury. He was subsequently taken for treatment at Ben Taub hospital.

25. The officer who was managing the case took the reports of the evidence gathered during the search of the home and a Harris County Assistant District Attorney authorized a felony charge of Possession with Intent to Deliver a Controlled Substance. See **Exhibit G**, Information on Possession Charge.

26. While Bernard may have been considered “in custody” during his initial admission at Ben Taub he was never physically arrested and held in any jail. Arrangements were subsequently made to allow Bernard to post a bond on the charges against him. He was never held in jail or arrested and processed on the warrant. **Exhibit F**, page 54 line 25 thru page 57 line 4.

27. These facts to not support a claim of false arrest. Because of the need for medical treatment Bernard was never physically arrested or held in any jail. In light of his physical condition and the need for ongoing treatment Bernard was never subsequently arrested for arraignment.

28. The Plaintiffs’ Third Amended Original Complaint fails to identify the officers alleged to have falsely arrested Bernard. The officers at the scene are all protected by qualified immunity.

**D. Bernard and Gonsoulin have not established a claim of false imprisonment.**

29. Both Bernard and Gonsoulin claim to have been imprisoned by “Defendant Officers” but fail to identify the individual officers alleged to have imprisoned them. Obviously, geographic and temporal realities make plain that all of the named defendants could not have participated in the acts complained of.

30. Since Bernard was not falsely arrested as alleged in Count I of Plaintiffs’ Third Amended Original Complaint, his prolonged treatment at Ben Taub hospital cannot be the basis for a claim of false imprisonment.

31. Gonsoulin was not allowed to go back into her home until the Narcotics Squad 15 had completed the search authorized in the narcotics search warrant and was detained to be interviewed by the Homicide Division as a material witness in its investigation. However, she was never under arrest or physically restrained. See **Exhibit** H, the deposition of Elizabeth

Gonsoulin, page 13 line 23 thru page 14 line 14, page 14 line 22 thru page 15 line 5, page 41 line 23 thru page 42 line 3 and page 65 line 24 thru page 66 line 14. The individual officers named in the Complaint did not have any contact with the witnesses after the investigation was turned over to the Homicide Division. The fact that unidentified officers may have been inattentive to Gonsoulin's needs while waiting to be interviewed does not rise to the level of a constitutional violation.

32. Even if the detention was unreasonable, Gonsoulin has not established liability for Houston. In *Plemons v. Amos*, 306 Fed. Appx. 160 (2009) the plaintiff was detained by police officers executing a search warrant merely because he was at the scene. After over three hours Plemons was determined not be an individual of interest and was released. The Fifth Circuit held the determination by the district court that Plemons had been detained for an unreasonable period, did not satisfy the burden of showing the detention was pursuant to a City policy.

**E. Plaintiffs have failed to establish a Due Process/Brady Violation**.

33. Without identifying who did what, Plaintiffs allege "Defendant Officers" deliberately hid exculpatory evidence, depriving Plaintiff (presumably Bernard) of Due Process in violation of the 5th and 14th Amendments to the Constitution.

34. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed2d 215 (U.S. 1963) prohibits the Government from suppressing evidence favorable to the accused "where the evidence is material either to guilt or to punishment." A *Brady* violation can be broken down into three basic elements: (1) the prosecution did not disclose the evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material." *United States v. Fernandez*, 559 F.3d 303, 319 (5th

Cir.), cert. denied, --- U.S. ----, 129 S.Ct. 2783, 174 L.Ed.2d 273 (2009)(quoting *United States v. Infante*, 404 F.3d 376, 386 (5th Cir.2005)).

35. The individual defendants did not conduct the search that found phencyclidine (PCP) or marijuana at 6725 Sherwood Drive. Immediately after the officer-involved-shooting, Sergeant Davis and his entire squad stood down and turned the search of the home over to Narcotics Squad 15, under the supervision of Sergeant Yencha. **Exhibit E.** The individual defendants were also sequestered from all of the residents from the home to allow the Homicide Division to conduct their interviews. The allegations of hiding exculpatory evidence do not apply to any of the individuals named as defendants in this civil action. Plaintiffs have been provided with all of the reports and statements prepared by the individual defendants and cannot point to any untrue statements about finding drugs in any of those reports.

36. In addition, even if true Bernard cannot show the evidence was material because there was no conviction. The Harris County District Attorney elected to dismiss the charges prior to any trial so there was no prejudice to Bernard.

37. Finally, even if true, it is established law that *Brady* does not extend so far as to provide relief in a situation where "a police officer makes a false statement to a prosecutor." *See Harris v. Kuba*, 486 F.3d 1010, 1017 (7th Cir. 2007).

**F. Plaintiffs cannot show any conspiracy to commit constitutional violations.**

38. Plaintiffs similarly allege, without identifying who did what, that the individual defendants conspired with each other to agree to not report that no drugs were found during the search. These allegations ignore the fact that Squad 13 did not conduct the search that found

drugs at the scene. There is no evidence that any of the named defendants reported finding any drugs at the residence, so there can be no conspiracy as alleged by Bernard.

39. While Plaintiffs Third Amended Original Complaint makes reference to 42 U.S.C. § 1983, it is 42 U.S.C. § 1985 which generally prohibits conspiracies to interfere with civil rights. Any conspiracy claim in this case fails as a matter of law because "[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952))(internal quotations omitted). The City of Houston is a corporation. *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998). The only defendants in this suit are the City and some of its police officers. "The City of Houston is a single legal entity and, as a matter of law, its employees cannot conspire among themselves." *Swilley v. City of Houston*, 457 F. App'x 400, 404 (5th Cir. 2012) (citing *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998). Therefore, to the extent that Plaintiff intended to bring a § 1985 conspiracy claim against the defendants, the Court should dismiss that claim as a matter of law.

**G. The Plaintiffs cannot show a failure by other officers to intervene.**

40. Bystander liability is a theory on which liability may be imputed to an officer who knows that another officer is violating an individual's constitutional rights but, despite having a reasonable opportunity to prevent that harm, does nothing. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)(quoting *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 (4th Cir. 2002)). In addition, plaintiff must satisfy the second prong of the qualified immunity analysis, the plaintiff must show that "the allegedly violated constitutional rights were clearly established at the time of

the incident" and the officer's conduct "was objectively unreasonable in the light of that then clearly established law." *Id*. at 305 (quoting *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998) (emphasis in original)).

41. The constitutional harm alleged by Plaintiffs here arose solely out of the execution of a narcotics search, which was conducted pursuant to a "no-knock" warrant. Movants cannot be held liable under the theory of bystander liability for any "seizure" claim when the entry and search were authorized by the warrant.

42. With regard to the excessive force claim, events transpired so quickly there was no reason for any of the individual officers to question Officer Rodriguez's decision to use deadly force and certainly no opportunity to prevent his actions. Plaintiffs cannot establish that any one of the individual defendants knew that Officer Rodriguez's actions were unconstitutional or had any way to prevent them. There was only one shot fired and all of the officers proceeded reasonably to secure the home and then provide Bernard with emergency first aid. The actions of all of the "bystander" officers were clearly reasonable under the circumstances.

**H. Plaintiffs cannot establish their state and common law claims.**

43. Plaintiffs state law claims against the individual named defendants and unidentified officers for malicious prosecution, assault and battery, negligence, and intentional infliction of emotional distress are all barred by qualified and governmental immunity. Under Texas law, official immunity is a common-law defense that shields police officers from personal liability arising from their performance of (1) discretionary duties; (2) in good faith; and (3) within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex. 1994); *Kersey v. Wilson*, 69 S.W.3d 794 (Tex. App. Fort Worth 2002). This immunity is based on the sound

public policy which encourages police officers to perform their duties without fear of personal liability for negligent or improper performance. *Harris County v. Ochoa*, 881 S.W.2d 884, 887 (Tex. App.–Houston [14th Dist.] 1994, writ denied).

44. The shotgun pleading fails to identify what specific acts are attributed to each individual defendant or how the actions of any individual defendant may give rise to any of the state law claims. For example, none of the individual defendants, other than the case manager, were involved in the prosecution of Bernard. Most of the individual officers had no physical contact with the plaintiffs and the ones who did have contact acted reasonably under the circumstances to effectively execute the narcotics search warrant while protecting the safety of themselves and other officers. The members of the squad do not have vicarious liability for the actions of other officers.

45. The intention infliction of emotion distress claims also fails because they are based on the same operative facts as the section 1983 claims. *See Zepeda v. Sizemore*, 2013 WL 4677964, at *6-7 (W.D. Tex. Aug. 30, 2013) (explaining that under Texas law, "where the gravamen of a plaintiff's complaint is actually another tort, such as a constitutional rights violation or false imprisonment, a cause of action for intentional infliction of emotional distress is not available")(internal quotation omitted); *see also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) ("intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies") (internal citation omitted).

**I. Plaintiffs' have been given an adequate opportunity to identify any additional officers (unidentified officers) and have failed to name specific officers or set forth specific actions taken by any additional officers which support any claim upon which relief can be granted.**

46. Bernard filed his Original Complaint over a year ago. ECF 1. Plaintiffs have been provided with all of the relevant police reports and the complete investigations of the officer-involved-shooting conducted by the Homicide Division and Internal Affairs Division of the Houston Police Department. These records and other discovery responses have identified all of the HPD officers who were on the scene on March 19, 2013 or involved in the subsequent investigations. Bernard has twice amended his Original Complaint, most recently on January 7, 2016 to arbitrarily name all of the members of Narcotics Squad 13 as individual defendants without specifying their actions at the scene which give rise to their liability. No attempt has been made to name the remaining unidentified officers listed as John Doe 1-3 or to set forth specific actions taken by any additional officer. At this point the claims against John Doe 1-3 should be dismissed for failure to state a claim upon which relief may be granted. In addition, Plaintiff has failed to comply with Rule 4, Fed. R. Civ. Proc., by failing to identify the individual officers by name and has failed to comply with the time limit for service of the summons in Rule 4(m).

**J. Claims against Houston under the Texas Tort Claims Act fail as a matter of law.**

47. In Texas, under the doctrine of sovereign immunity, Houston cannot be held liable for the actions of its employees unless there is a constitutional or statutory provision waiving such immunity. *See City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex.1998).

48. However, the Texas Legislature enacted the Texas Tort Claims Act ("TTCA") to waive sovereign immunity in certain limited circumstances. *See Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, at 340, 343 (Tex.), cert. denied, 525 U.S. 1017,

119 S.Ct. 541, 142 L.Ed.2d 450 (1998); *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 586 (Tex.1996).

49. In this case the Plaintiffs have failed to allege facts giving rise to any one of the limited circumstances where sovereign immunity has been waived. For example, claims "asserting a failure to identify [the plaintiff's] medical condition, a failure to render proper medical care, a failure to train, control and supervise, and improper police procedures are not waived by the TTCA; therefore, these negligence allegations are barred by sovereign immunity." *Riggs v. City of Pearland*, 177 F.R.D. 395, 406 (S.D.Tex.1997) (citing *Texas Dep't of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex.1974)).

50. Plaintiffs also failed to provide the City with timely written notice of their claims as required by state and local law. Plaintiffs were was obligated to provide the City with timely written notice of their claims for damages under two separate provisions. First, under the Texas Tort Claims Act, ("TTCA") the City "is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred." TEX. CIV. PRAC. & REM. CODE § 101.101(a)(Est Supp. 2011).

51. Second, § 101.101(b) of the TEX. CIV. PRAC. & REM. CODE approves and ratifies Houston's separate notice requirement, which provides:

> "Before the City of Houston shall be liable for damages for personal injuries of any kind, the person injured or some one [sic] in his behalf shall give the Mayor or City Council notice in writing of such injury within ninety days after the same has been sustained . . . and the failure to so notify the city within the time and manner specified herein shall exonerate, excuse and exempt the city from any liability whatsoever." CHARTER OF THE CITY OF HOUS. Art. IX, § 11, at 40 (effective 1905), attached as **Exhibit I.**

52. The Texas Supreme Court has "consistently recognized that compliance with such charger provisions is mandatory and that timely filing of a written notice of claim is a condition precedent to maintenance of a suit against a city for injuries." *City of Houston v. Torre*s, 621 S.W.2d 588, 590 (Tex. 1981)(declining to excuse the plaintiff's failure to provide notice to the City, "in the absence of which his claim was barred," and collecting cases). Plaintiffs have not shown that they have complied with the City's notice requirement or that the City waived its right to receive such notice.

53. Plaintiffs' state claims also fail because the City cannot be held vicariously liable for injuries allegedly cause by police officer's intentional use of force. A city cannot waive its immunity from claims based on intentional torts committed by city employees. *Holland v. City of Houston*, 41 F. Supp. 2d 678, 712 (S.D. Tex. 1999)(mem. op.). In factually similar cases to the instant case, courts in Texas have treated allegations of excessive force by law enforcement as giving rise to intentional-tort claims rather than claims of negligence. *See, e.g*., *State Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001)(finding that actions allegedly taken by a peace officer, which included bashing a motorist's window with his nightstick, were "clearly intentional" and "fit squarely within [TEX. CIV. PRAC. & REM. CODE §] 101.057's exclusion of claims arising out of assault, battery and false imprisonment"); *Medrano v. City of Pearsall*, 989 S.W.2d 141, 144 (Tex. App.–San Antonio 1999, no pet.)(finding that the TTCA intentional-tort exception could not be circumvented merely by alleging that an officer's beating of a handcuffed driver reflected negligent hiring or training by the city). Since the City cannot waive its immunity to claims arising out of a municipal employee's intentional conduct, the City is

entitled to governmental immunity. See TEX. CIV. PRAC. & REM. CODE § 101.057(2)(West Supp. 2011).

**K. Plaintiffs state law claims against Houston for negligence, respondent superior, negligent hiring, retention, supervision and control are all barred by governmental immunity. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 693-94, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).**

54. Plaintiff's Third Amended Original Complaint alleges claims of respondent superior and that Houston failed to: (1) adequately train employees; (2) failed to properly supervise employees; (3) failed to comply with laws, rules, statutes, standards and regulations regarding arrest; and (4) other unspecified acts of negligent hiring, retention, supervision and control of its employees (all to be announced at the time of trial). ECF 28 ¶¶ 81-85.

55. As previously stated in Texas, under the doctrine of sovereign immunity, Houston cannot be held liable for the actions of its employees unless there is a constitutional or statutory provision waiving such immunity. *City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex.1998).

56. The law is well-settled that these types of generic allegations cannot be used to impose liability on a municipality. Municipal liability cannot be sustained under a theory of negligence, respondeat superior or vicarious liability. *Monell v. Dep't Social Servs.,* 436 U.S. 658, 691 (1978)*; Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). To hold the City liable for the constitutional violations allegedly committed by the named defendants or other unnamed HPD officers, the Plaintiff must show that an (1) official policy or custom (2) promulgated by an official policymaker (3) was the moving force behind the violation of a constitutional right. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). A municipality is only liable under § 1983 for acts that are "directly attributable to it 'through some

official action or imprimatur.'" *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009)(quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). For liability to attach, "the municipality must cause the constitutional tort, which occurs "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008)(quoting *Monell*, 436 U.S. 694).

57. There is a stringent and very high standard of proof to impute liability to a local government. *Bd. of County Com. of Bryan County v. Brown*, 520 U.S. 397, 405-11 (1997)(deliberate indifference is a "rigorous" and "stringent standard; differentiating it from simple or even heightened negligence"); *Piotrowski*, 237 F.3d at 579 (the deliberate indifference standard with a facially innocuous policy is a "stringent test"). In effect this standard requires a "decision by the City itself to violate the constitution." *City of Canton v. Harris*, 489 U.S. 378, 395 (1989). In addition to proving this extraordinary culpability, Plaintiffs must also satisfy the causation requirement by showing that the identified deficiency led directly to the alleged constitutional violations. *Brown*, 520 U.S. at 405. The district court is required to test with considerable care the link between the policy and the alleged harm. *Brown*, 520 U.S. at 410. A policy that makes the violation of rights more likely is not enough alone to infer that the policy actually produced the specific violation alleged. *Brown*, 520 U.S. at 410-11; *Pineda*, 291 F.2d at 333.

58. Plaintiffs Third Amended Original Complaint fails to identify (1) an official policy (or custom) of which (2) a policymaker can be charged with actual or constructive knowledge and (3) a constitutional violation whose "moving force" is that policy (or custom). *Piotrowski v. City*

*of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The burden is on Plaintiffs to prove these three elements. Plaintiffs have no evidence linking any HPD policy to any of their allegations of constitutional violations.

59. Plaintiffs claim the training of HPD officers is somehow inadequate are without any factual support. Looking at the training of the primary officer in this case, Officer Rodriguez's training has certainly not been inadequate. Officer Rodriguez has completed over 3,400 hours of formal law enforcement training since he began his employment as a Houston Police Officer in 1996. He completed the basic peace officer training program required by the Texas Commission of Law Enforcement Standards and Education ("TCLEOSE") at the Houston Police Academy and subsequently completed numerous training programs specific to the use of force in general and execution of narcotic search warrants in particular. See **Exhibit J.** Officer Rodriguez's training record. In addition to having no evidence of any failure to adequately train its police officers there is no link between any HPD policy or training program and the constitutional violations alleged by the Plaintiffs.

60. Plaintiff's allegations of inadequate hiring procedures also fail. HPD takes steps to accept only qualified applicants as police officers. Minimum standards are established by TCLEOSE and HPD has always set hiring standards that exceed these requirements. All applicants complete an extensive application and background investigation. Qualified candidates must also have psychological clearance and medical clearance, including drug testing. Plaintiffs have no basis for his allegations that HPD's hiring procedures are inadequate or that Officer Rodriguez or any one of the other individual defendants was a poor candidate for their position.

61. Plaintiffs' claims of negligent supervision are also without any factual support. Narcotics Squad 13 that executed the narcotics search warrant in this case was supervised by Sergeant William Davis who directed his squad in compliance with all Houston policies for the execution of search warrants and the use of force. **Exhibit D.**

62. Plaintiffs' allegations of negligent retention also lack any factual support. By way of example, Officer Rodriguez has been a Houston Police Officer for almost twenty (20) years and during that period he has only once been disciplined for an incident where he was at-fault in an accident with a department vehicle in a parking lot in 2000. Outside of this incident, he has only twice been investigated for an officer-involved-shooting. In both of the other cases there was someone shooting at him before he fired a shot. See Officer Rodriguez's Complaint History, **Exhibit K**.

63. Plaintiffs have not plead but based upon discovery responses Defendants anticipate Plaintiffs will attempt to allege a "ratification" theory by suggesting Houston has an unofficial policy or practice of condoning officer-involved-shootings by always finding that the officer's actions were justified. However, Plaintiffs have no data or expert who can testify in support of a "ratification" theory.

64. A municipality may only be liable on a "ratification" theory, if the "subordinate's decision is subject to review by the municipality's authorized policymakers" and "the authorized policymakers approve [the] subordinate's decision and the basis for it[.]" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). "For example, if a school board - a policymaker ... approves a superintendent's decision to transfer an outspoken teacher, knowing of the superintendent's retaliatory motive for doing so, the government entity itself may be liable; but if

the school board lacks such awareness of the basis for the decision, it has not ratified the illegality and so the district itself is not liable." *Milam v. City of San Antonio*, 113 F. App'x. 622, 626 (5th Cir. 2004). "Whether a governmental decision maker has final policymaking authority is a question of law." *Pembauer v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

65. "For a municipality to be liable on account of any policy, express or implied, the plaintiff must show, among other things, either (1) that the policy or practice violated federal law or authorized or directed the deprivation of federal rights or (2) that the policy or practice was adopted or maintained by the municipality's policymakers with deliberate indifference as to its known or obvious consequences[.]" *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (citations omitted). The latter showing "generally requires that a plaintiff demonstrate at least a pattern of similar violations." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003).

66. In this civil action there is no allegation or evidence that Homicide Division or Internal Affairs Division of the Houston Police Department are policymaking authorities. Their findings in individual investigations cannot be used to support a "ratification" theory of liability for Houston. There is no pattern of similar cases which Plaintiffs can point to as establishing ratification of the constitutional violations. More importantly, there is no showing any Houston decision makers have acted "with deliberate indifference to the known or obvious fact that constitutional violations would result." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (quotations omitted). Plaintiff's allegations of negligence do not identify a policymaker, show that he or she possessed the information they rely upon to show failure to enforce existing policies, and elected to proceed anyway in

"deliberate indifference" to the rights of citizens. Plaintiffs cannot show Houston was deliberately indifferent toward the Plaintiffs' constitutional rights.

67. The ratification theory is reserved for "extreme factual situations." *See Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986). Even if this Court could find the Homicide or IAD investigations somehow ratified the type of underlying unconstitutional actions of Houston Police Officers, Plaintiffs cannot show that these investigations were the moving cause of any constitutional violation in this civil action. *See Piotrwoski*, 237 F.3d at 578.

## VI. CONCLUSION AND PRAYER

WHEREFORE, Defendant City of Houston, Individual Defendant Officers Ferdinand Rodriguez, Jr. ("Rodriguez"), Eduardo Medrano ("Medrano"), Gerald Goines, Jr. ("Goines"), Ciro Olivares ("Olivares"), Shanta Morton ("Morton"), Steven Bryant ("Bryant"), Sergeant William Davis ("Davis"), and unidentified Officers John Doe 1-3 ("unidentified officers"), all pray that their motion for summary judgment be granted as to all of Plaintiffs claims against them and that they be dismissed with prejudice, with costs of court being borne by the party incurring same.

Respectfully submitted,

RONALD LEWIS
City Attorney

DONALD FLEMING
Section Chief
Labor, Employment & Civil Rights Section

/s/ *Henry N. Carnaby*
Henry N. Carnaby
Senior Assistant City Attorney
TBN: 24064014; Fed. Id. No: 1242021

P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 3rd Floor
Houston, Texas 77002
Phone: (832) 393-6309
Fax: (832) 393-6259
Email: henry.carnaby@houstontx.gov

MALISSA WILSON
Senior Assistant City Attorney
SBN: 24085927
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-0368
Phone: (832) 393-6476
Fax: (832) 393-6259
Email: malissa.wilson@houstontx.gov

**CERTIFICATE OF SERVICE**

I certify that on **July 21, 2016,** a copy of Defendants Motion for Summary Judgment was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing to the opposing counsel of record for Plaintiff.:

Chareka M. Gadson
Gadson Law Group, PLLC
405 Main Street, Ste. 455
Houston, TX 77002
**via e-file**

/s/ *Henry N. Carnaby*
Henry N. Carnaby