UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GEORGE BERNARD<br>ELIZABETH GONSOULIN<br>Plaintiffs,<br><br>v.<br>CITY OF HOUSTON<br>FERDINAND RODRIGUEZ, JR,<br>EDUARDO MEDRANO<br>GERALD GOINES, JR.<br>CIRO OLIVARES<br>WILLIAM DAVIS<br>SHANTA MORTON<br>STEVEN BRYANT<br>JOHN DOE 1-3<br>in their individual and official capacities<br>Defendants, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br>CIVIL ACTION NO 4:15-cv-00734<br><br><br><br><br><br><br><br><br><br><br><br>JURY DEMANDED |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW George Bernard ("Mr. Bernard") and Elizabeth Gousoulin ("Mrs. Gousoulin") as Plaintiffs and files this Response to Defendants' Motion to Dismiss ("Response"). Defendants are City of Houston, Ferdinand Rodriguez, Jr. ("Defendant Rodriguez"), Eduardo Medrano (Defendant Medrano), Gerald Goines, Jr., , in their individual and official capacities.

## I. NATURE AND STAGE OF PROCEEDINGS

1. On March 19, 2015, Plaintiffs filed a complaint against Defendants for false arrest, excessive force, false imprisonment, due process/ Brady violation, conspiracy to commit constitutional violations, failure to intervene, malicious prosecution, assault and

battery, intentional infliction of emotional distress, Texas Tort Claims Act violations, negligence, Respondent Superior, and Negligent Hiring, Retention, Supervision, and Control. On June 21, 2016, Defendants filed a motion to dismiss.

## II. Exhibits

Exhibit 1 Deposition transcript for Ferdinand Rodriguez

Exhibit 2 Deposition transcript of Medrano

Exhibit 3 Data Transmission Records Message Line 2013-03-20/02:40:16 MsgID: 77848320

Exhibit 4 Criminal Case Transaction Document Line 03/21/13 Complaint

Exhibit 5 Dismissal

Exhibit 6 Houston Police Department Investigation Panel Member Commentary

## III. FACTUAL BACKGROUND

2. On or about March 19, 2013, Houston Police Department executed a no knock warrant at the house that belongs to Mrs. Gousoulin and her husband, an elderly couple. (See Defendant's Exhibit A ) The warrant did not name anyone who resided in the home. Specifically, the warrant did not identify Mr. Bernard or Mrs. Gousoulin. As Mr. and Mrs. Gousoulin sat watching tv in the living room, the officers burst violently into their home. (See Defendant's Exhibit H; page 9, line 25; page 10, line 1- 6 ) Prior to the police officers entering the home, Mr. Bernard had began walking toward the kitchen. He had reached the dining room when the police officers entered the home. (See Defendant's Exhibit H; page 10, line 15-22). Upon hearing the abrupt entry of the police officers and Mr. Bernard turned and put his hands in air. ( See Defendant's Exhibit F; page 28, line 21-25, page 29, line 13-20). Mr. Benard never

made any movements toward his waistband. Defendant Rodriguez shot Mr. Bernard in the abdomen as Mr. Benard's hands were still in the air. The events took place very quickly. (See Defendant's Exhibit F; page 31, line 7-12). There was no weapon located on Mr. Benard's person or near his body( See Exhibit 1; page 23, line 3-4). Mr. Benard flatline several times and had to be resuscitated as many times, because of the medication administered for resuscitation. (See Exhibit H; page 60, line 5-7 ). Mr. Benard endured months of surgeries and had 6 toes and 9 fingers amputated. (See Defendant's Exhibit H, page 59, line 24-25; Defendant's Exhibit F, page 38, line 9-10, line 15-16; ). Also, Defendant Rodriguez did not see Mr. Benard committing any crime when he entered the home nor did he see anyone else committing any crimes. (See Exhibit 1 page 41, line 2-7)

3. Mrs. Gousoulin was removed from her home after her son was shot and placed in the back of a police car. See Defendant's Exhibit H, page 13 line 23-25, page 14 line 25, page 15 line 1-9) During Mrs. Gousoulin's detention, she informed officers of the Houston Police Department that she needed to use the restroom. Her repeated requests, after being in the vehicle for a lengthy period of time, went unanswered and she urinated and defecated in the backseat of a Houston Police Officers' vehicle. (See Defendant's Exhibit H, page 18 line 16-25, page 19 line 1-3, page 19 line 12-14)

During her imprisonment in the police vehicle, Mrs. Gonsoulin was not provided with her medications. She was not given her medications until she had an episode at the police station (See Exhibit 3; MsgID: 77848320)

## IV. STANDARD OF REVIEW FOR RULE 12(b)(6) MOTION TO DISMISS

4. The Fifth Circuit reviews de novo the grant of a 12(b)(6) motion to dismiss. *Ballard v. Wall*, 413 F.3d 510, 514 (5th Cir. 2005). When considering defendant's motion, the court must construe the factual allegations in the complaint in the light most favorable to plaintiff. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). If the factual allegations in plaintiff's complaint are sufficient to show that the right to relief is plausible and above mere speculation, the court should deny defendant's motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007). To survive a Rule 12(b)(6) motion to dismiss, "a complaint does not need detailed factual allegations, but must provide the Plaintiff's grounds for entitlement for relief – included factual allegations that when assumed to be true raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

## V.ARGUMENT SUMMARY

A) Plaintiffs can and have overcome the defense of qualified immunity.

B) Benard has established a claim for excessive force under 42. U.S.C §1983.

C) Benard has established a claim of false arrest under 42. U.S.C §1983.

D) Gousoulin have established a claim of false imprisonment

E) Benard has established a Due Process/Brady Violation

F) Plaintiffs conspiracy to commit constitutional violations is moot.

G) Plaintiffs claim of failure to intervene is moot as Plaintiff dismisses this claim.

H) Plaintiff can establish state law claims for malicious prosecution.

I) Plaintiffs claims for battery and assault are moot.

J) Plaintiff can prevail on their claim for intentional infliction of emotional distress.

K) Plaintiffs claims under the Texas Tort Claims Act and Respondent Superior liability do not fail.

L) Plaintiffs dismisses John Doe officers from claim.

## VI. ARGUMENT

**A. Plaintiffs can overcome the defense of qualified immunity.**

5. Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *Baker v. Story*, 621 S.W.2d 629, 644 (Tex. Civ.App.--San Antonio 1981). If an action involves personal deliberation, decision and judgment, it is discretionary; actions which require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial. *Wyse v. Department of Pub. Safety*, 733 S.W.2d 224, 227 (Tex. App—Waco 1986). Good faith has been determined by Courts by looking at "whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."*City of Lancaster v Chambers*, 883 S.W.2d 650, 656 (Tex. 1994).

6. Here, Defendant Rodriguez has been sued individually and in his official capacity. Defendant Rodriguez was performing a discretionary task while participating in the execution of the search warrant. Defendant Rodriguez failed to act in good faith when he shot

Mr. Benard, as Mr. Benard's hands were in the air. (deposition of benard). The prohibition of excessive force during a lawful execution of a search warrant is established by law. According to the factors stated in *Graham v. Connor*, 490 U.S. 386, 394 (1989), Defendant Rodriguez violated Mr. Benard's 4th amendment rights against unreasonable seizures when Defendant Rodriguez shot Mr. Benard while Mr. Benard's hands were in the air. Mr. Benard was not an individual named in the search warrant, was not interfering with the execution of the search warrant, was not posing a threat of harm to the officers or others, was not armed and Mr. Benard was not committing a crime. In order to overcome a qualified immunity defense, a plaintiff must allege a violation of a constitutional right, and then must show that 'the right was clearly established . . . in light of the specific context of the case.'" Thompson v. Mercer, 762 F. 3d 433, 437 (5th Cir. 2014). Hence, Defendant Rodriguez is not entitled to qualified immunity as Mr. Benard has asserted a clearly established right and an unreasonable violation of that right in light of the facts surrouding the violation. Additionally, there are genuine issues of material fact that should be decided by a jury.

**B. Bernard has established a claim for excessive force under §1983**

7. "When a plaintiff alleges excessive force during an investigation or arrest, the . . . right at issue is the Fourth Amendment right against unreasonable seizures." Tolan v. Cotton, 134 S.Ct. 1861, 1865-66 (2014). The Supreme Court has recognized that the "'[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application'", and accordingly its "application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. At 396. To prevail on a § 1983, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the constitution or laws of the United States. 42 U.S.C § 1983 (1981).

8. Here, Defendant Rodriguez stated he did not witness anyone committing any crimes when he entered the home. Additionally, the search warrant that was being executed did not name Mr. Benard. (See Defendants Exhibit A) Since there was no crime to associate with Mr. Benard, this weighs in Mr. Benard's favor. Further, Mr. Benard did not pose an immediate threat to Defendants or to others. Mr. Benard was enjoying a television program with his elderly parents and proceeded to head to the kitchen. Mr. Benard starting making his way to the kitchen, prior to Defendants bursting into the Gousoulin home. Upon their entry, Mr. Benard had made it only to the dining room. Contrary, to Defendants account, Mr. Benard did not get up from his seat once they entered. Upon being told freeze, one time, Mr. Benard turned to the Defendants with his hands up. Mr. Benard did not pose a threat in that position. Again, this weighs in Mr. Benard's favor. Notwithstanding the fact that Mr. Benard was headed to the kitchen before and as the Defendants entered the home, according to Defendant Rodriguez, Mr. Benard was not a suspect for any crimes witnessed by Defendant; so Mr. Benard was not resisting an arrest or fleeing an arrest. Further, Defendants' admit they had no reason to arrest when they state “Officers were not attempting to arrest Bernard at the time of his injury”. (Defendants' Motion To Dismiss page 10, paragraph 20, line 4-5). However, even if Defendants assert they were not arresting Mr. Benard, their actions indicated a seizure of his person. Mr. Benard was subjected to excessive force when he was shot by Defendant Rodriguez after putting his hands in the air, while standing in the middle of his elderly parents'

dining room, while not posing a threat. Therefore, Mr. Benard has provided sufficient facts to support a claim for excessive force. Defendant Rodriguez's shooting of Mr. Benard was objectively unreasonable and excessive. Additionally, Mr. Benard has sufficiently pleaded excessive force in violation of 4th Amendment and 42 U.S.C § 1983, assault, and battery

**C. Bernard has established a claim for false arrest under 1983**

9. A claim of false arrest implicates the Fourth and Fourteenth Amendment and is thus actionable under § 1983. Thomas v. Kipperman, 846 F.2d 1009, 1011 (5th Cir. 1992). A claim for false arrest does not depend upon the validity of each individual charge, but on the validity of the arrest as a whole; if there is probable cause for any of the charges made, the arrest is supported by probable cause and the claim for **false arrest** fails. Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995).

10. Here, Mr. Benard was not free to move freely away from the barrel of Defendant Rodriguez gun. ( See Exhibit 1 page 24 line 13-14). According to Defendant Medrano, he ordered Defendant Rodriguez to "stand down" on Mr. Benard. (See Exhibit 2, page 18, line 24-25) Defendants' motion states that Mr. Benard was not physically arrested or held in any jail. However, it is long understood that a person not being able to leave because of a police officer's use of authority is an arrest or detention. It is reasonable to conclude that as Defendant Rodriguez's gun pointed at Mr. Benard placed Mr. Benard in the custody of Defendant Rodriguez and Mr. Benard did not feel free to leave. Mr. Benard did not provide consent for this detention and based on Defendant Rodriguez Mr. Benard was not seen committing any crimes; therefore the detention was without authority of law. Therefore, Mr. Benard has established a claim for false arrest , and Defendants' motion for dismiss should be denied.

**D. Mrs. Gousoulin and Mr. Benard have established claims for false imprisonment.**

11. To establish a false arrest claim, Nzeadibe must prove (1) willful detention, (2) without consent, and (3) without authority of law. *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985). A cause of action for false imprisonment requires proof of the identical elements. *Pete v. Metcalfe*, 8 F. 3d 214 (5th Cir. 1993). All that is necessary to establish false imprisonment is that an individual be restrained of his liberty under the probable imminence of force without any legal cause or justification therefor. It is not necessary to show actual force, threats, or injury done to the individual's person, character, or reputation. The lack of malice, the presence of good faith, or the presence of probable cause do not affect the existence of the wrong when the detention is unlawful. If the act of the officer arresting a person without a warrant is unlawful, the imprisonment is false. *Nesmith v. Alford*, 318 F.2d 110, 118-19 (5th Cir. 1963)

12. Here, Mrs. Gousoulin was detained in the back of a police car and was not free to decide her movements. Houston Police Department officers detained Mrs. Gousoulin in the backseat of one of their vehicles. Mrs. Gousoulin did not give consent for the detention. Mrs. Gousoulin was not under arrest or suspected of committing any crimes, according to Defendant Rodriguez. (See Exhibit 1 page 41, line 2-7 ). Therefore, Mrs. Gousoulin was held outside the authority of law. The severity of the restriction on Mrs. Gousoulin's movement is clearly illustrated by the fact that while in the back of a police car Mrs. Gousoulin urinated and defacted on herself. Mrs. Gousoulin felt like she was never free to go. If Mrs. Gousoulin thought that she was free to find a restroom, after being denied accomodations after plenty of requests, she certainly would have done so. It's appalling for Defendants to even suggest that

Mrs. Gousoulin did not feel her movement restricted and chose to defacte and urinate on herself. Mrs. Gousoulin has provided sufficient facts to establish that she was falsely imprisoned and Defendants motion should be denied.

13. The elements for false imprisonment are identical to the elements for false arrest, and Mr. Benard has provided sufficient facts to support a claim for false arrest in paragraph #10 of this response, and has simultaneously provided sufficient facts to support a claim for false imprisonment. Therefore, Defendants motion should be denied.

**E. Mr. Benard and Mrs. Gousoulin have established violations of due process/Brady.**

14. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall deprive any person of life, liberty, or property, without due process of law." *Deshaney v. Winnebago County Dept of Social Services*, 489 U.S. 189, 194 (U.S. 1989). The Due Process Clause of the Fourteenth Amendment was intended to prevent government "from abusing [its] power, or employing it as an instrument of oppression. Id. 196. When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. Id. 199. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- e. g., food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on

his own behalf -- through incarceration, institutionalization, or other similar restraint of personal liberty -- which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means. Id. 200.

15. Here, Mr. Benard's due process rights were violated when the district attorney was not informed that Mr. Benard was not seen committing any crimes. Also, Mr. Benard's due process rights were violated when the district attorney was not informed that no illegal items found were found on Mr. Benard's person. Also, Defendants were wrong in their assertion that Mr. Benard cannot point to any documents were generated as a result of false statements from a named defendant. Although, Defendants state confidently in their motion that no Defendant officer named conducted a search or found any illegal contraband, Defendant Goines, provided information that lead to the felony charges filed against Mr. Benard, as if he had first hand knowledge. (See Exhibit 4 Line 03/21/13 Complaint). This illustrates that any statements made to the district attorney's office intake office, by Defendant Goines, was false. This is clearly an abuse of power, and which is exactly what the Fourteenth Amendment intended to prevent. Therefore, Defendants motion to dismiss should be denied.

16. Furthermore, Mrs. Gousoulin's restraint of her liberty activated her due process rights and it beame the responsibility of Houston Police Department officers to ensure that accomodations were made for her to be able to have a basic bodily function, relieve herself, in a place and manner that was not humiliating and degrading. Defendants failed horribly, in both instances, and therefore there motion to dismiss should be denied.

**F. Plaintiff claim for conspiracy to violate constitutional rights are moot.**

17. Plaintiff has dismissed his claims against Defendant in his Fourth Amended Complaint.

**G. Plaintiff's claims for failure to intervene are moot.**

18. Plaintiff has dismissed his claims against Defendants.

**H. Plaintiff can establish state law claims for malicious prosectuion**

19. Malicious prosecution is an injury that is compensable under 42 U.S.C § 1983. *Sanders v. English*, 950 F2d 1152, 1159 (5th Cir. 1992). A theory of malicious prosecution may be utilized against state actors other than prosecutors. Hand v. Gary, 838 F. 2d 1420, 1426 (5 th Cir. 1988). It is a theory which may be asserted against arresting police officers to remedy an arrest without probable cause. *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1992). To prevail on a malicious prosecution claim in Texas, the Fifth Circuit requires the plaintiff to show that (1) a criminal action was commenced against him; (2) the prosecution was caused by the defendant or with his aid; (3) the action terminated in the plaintiff's favor; (4) the plaintiff was innocent; (5) the defendant acted without probable cause; (6) the defendant acted with malice; and (7) the criminal proceeding damaged the plaintiff. *Taylor v. Gregg*, 36 F.3d 453, 455 (5 th Cir. 1994).

20. Mr. Benard was subjected to an arrest during the execution of the warrant. Harris County District Attorney filed felony charges against Mr. Benard as a result of the information received from complainant Defendant Goines, an officer present during the arrest and shoting of Mr. Benard. (See Exhibit 4 Line 03/21/13 Complaint ) . The action being dismissed is not in dispute. Mr. Benard innocence of the charge is not debated by Defendants, as in their motion, they state that noone seen Mr. Benard in possession of any illegal contraband. Furthermore, Defendant Goines acted without any probable cause to support

contacting the district attorney's office to submit information to intiate criminal proceedings against. Defendant Goines act of submitting information alleging possession of a felonious amount of illegal contraband, while Mr. Benard lay in a hospital recovering from a gunshot wound, is nothing short of malicious. Especially when Defendant Goines knew he did not ever see Mr. Benard in possession of anything illegal. Mr. Benard was caused mental distress while healing from his gunshot wound, amputations, and multiple surgeries, because of the bogus criminal charge. Additiionally, Mr. Benard suffered economic damages as he was forced to post a bond, as if he was flight risk while fitted with a ilestomy bag, bandages for his amputed hands and feet, and multiple dressings for his multiple surgical procedures. Mr. Benard has sufficiently stated facts to support his claim for malicious prosecution and Defendants motion should be denied.

**I. Plaintiffs claims for battery and assault are moot.**

21. Plaintiff has dismissed his claims for assault and battery.

**J. Mrs. Gousoulin can prevail on their claim for intentional infliction of emotional distress.**

22. Under Texas law, a plaintiff seeking to prevail on such a claim must establish that the defendant acted intentionally or recklessly, that the conduct was "extreme and outrageous"; that the actions of the defendant caused the plaintiff emotional distress; and that the emotional distress suffered by the plaintiff was severe. *Kellough v. Bertrand*, 22 F. Supp. 2d 602, 609 (S.D. Tex. 1998). Liability [for outrageous conduct] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community. . . . Generally, the case is one in which a recitation of the facts to an average member of the community would lead him to exclaim, "Outrageous."*Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir. 1989).

23. Here, an elderly woman was subjected to an intrusion of her home by police officers employed by the City of Houston. No officer witnessed her committing a crime, and since she was not the subject named in the search warrant it is reasonable to assume that she was not suspected of being involved in any criminal activity. Nonetheless, after having her home invaded, she was removed from her home and placed in the back of a police vehicle. Mrs. Gousoulin being forced to sit in the back of police vehicle, with no permission to leave, and with no accomodations offered, to go relieve herself, like a normal human is beyound outrageous. Her treatment is far from how a suspect should be treated and far worse than how an innocent witness ought to be treated. Her treatment was so egregious a member of the Houston Police Department Investigation Panel expressed outrage . (See Exhibit 6)t Additionally, after enduring a violent invasion of her home, where she was not seen committing any crime or posing any threats, she had a gun put in her face. Then shortly there after she experienced being present when her son was shot. Mrs. Gousoulin experienced a spike in her blood pressure, the humiliation and degradation of her dignity that night because of the treatment she endured. She currently experiences nightmares and extreme anxiousness, also. Therefore, Defendants motion should be denied.

**K. Plaintiffs claims under the Texas Tort Claims Act and Respondent Superior liability do not fail.**

24. A governmental unit in the state is liable for personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.Tex. Civ. Prac. & Rem. Code § 101.021. Texas Tort Claims Act requires that for immunity to be waived, personal injury or death must be proximately caused by the condition or use of tangible property. *Bossley*, 968 S.W.2d at 343. Personal property is considered tangible if it can be handled, touched, or seen. *UTMB v. York*, 871 S.W.2d 175, 178-79 (Tex. 1994). An officer's badge, flashlight, gun, telephone, and radio are considered tangible personal property. *Smith v. Tarrant Cty.*, 946 S.W.2d 496, 501 (Tex. App. – Forth Worth 1997, writ denied).

25. In this case, Plaintiff pled Defendant Rodriguez shot him in his abdomen with a gun. Defendant Rodriguez utilization of the gun, caused Mr. Benard to flatline several times and have to be resuscitated, and the medication used caused the loss of # fingers and # toes, and numerous surgeries. The boot is tangible, personal property, that upon information and belief, is part of the uniform issued to the Defendant as a Houston Police Officer. The use of this personal property caused Plaintiff's injury. Therefore, City of Houston can be held liable and immunity is waived and Defendants motion should be denied.

**L. Plaintiffs have removed John Doe officers from claim.**

26. Plaintiffs has emoved John Doe officers from all claims.

## VII. CONCLUSION

For reasons above, Plaintiff requests that this court deny Defendant's Motion to Dismiss or in the alternative, give Plaintiff the opportunity to re-plead in accordance with Defendant's

motion.

Respectfully submitted,

GADSON LAW GROUP, PLLC

By: /s/attorneygadson@gadsonlegal.com
Chareka M. Gadson
TBN 24064247
FBN 1294724
601 Sawyer St., Suite 200
Houston, Texas 77007
Tel. (713) 229-9997
Fax (281) 501-6777
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I certify that on August 11, 2016 a true and correct copy of the foregoing document was served on the following through the Court's CM/ECF system:

/s/attorneygadson@gadsonlegal.com
Chareka M. Gadson