United States District Court
Southern District of Texas
**ENTERED**
March 02, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GEORGE BERNARD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-734 |
| | § | |
| CITY OF HOUSTON, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendants' Motion for Summary Judgment (Doc. 34). The court has considered the motion, Plaintiffs' response,[2] the summary judgment evidence, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.

## I. Case Background

Plaintiffs George Bernard ("Bernard") and Elizabeth Gonsoulin ("Gonsoulin") filed this civil rights action against multiple defendants, alleging violations of constitutional rights and state tort law during the execution of a warrant.

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 13, Ord. Dated July 7, 2015.

[2] In their response, Plaintiffs incorrectly refer to Defendants' motion as a motion to dismiss and cite the dismissal standard. See Doc. 35, Pls.' Resp. to Defs.' Mot. to Dismiss [sic] ("Pls.' Resp. to Defs.' Mot. for Summ. J.") pp. 1, 4 (unnumbered). However, Plaintiffs submit summary judgment evidence, suggesting that the error is a mere oversight.

## A.  Factual Background

On March 18, 2013, a confidential informant advised HPD officers that he had observed Dominick Benard[3] ("Dominick") selling marijuana at a residence on Sherwood Drive in Houston and had also observed a semi-automatic hand gun on the premises.[4]  The following day, HPD officers obtained a search and arrest warrant for the seizure of the marijuana and Dominick.[5]  The warrant allowed the officers to enter the residence without knocking and announcing their purpose and to arrest any other occupants who were found to be in possession of marijuana.[6]

In the evening of March 19, 2013, a squad of HPD officers executed the warrant at the residence.[7]  Defendant Ferdinand Rodriguez, Jr., ("Rodriguez") was the first officer through the front door after it had been breached with a battering ram.[8]  In a witness statement provided on March 20, 2013, Defendant Rodriguez

---

[3]     This is the spelling of the surname in the affidavit and the warrant. See Doc. 34-1, Ex. A to Defs.' Mot. for Summ. J., Search & Arrest Warrant p. 1 (unnumbered); Doc. 34-2, Ex. B to Defs.' Mot. for Summ. J., Aff. for Search & Arrest Warrant p. 2 (unnumbered).

[4]     See Doc. 34-2, Ex. B to Defs.' Mot. for Summ. J., Aff. for Search & Arrest Warrant p. 2 (unnumbered).

[5]     See Doc. 34-1, Ex. A to Defs.' Mot. for Summ. J., Search & Arrest Warrant, p. 1 (unnumbered).

[6]     See id. pp. 1, 2.

[7]     See Doc. 34-3, Ex. C to Defs.' Mot. for Summ. J., HPD Witness Statement of Def. Ferdinand Rodriguez, Jr., ("Rodriguez") p. 1 (unnumbered).

[8]     See id.; Doc. 35-1, Ex. 1 to Pls.' Resp. to Defs.' Mot. for Summ. J., Dep. of Def. Rodriguez p. 12

described what occurred in the next twenty to thirty seconds:

> As the front door opened, I stepped in the threshold and
> observed two elderly people sitting in chairs along the
> left side of the living room.  Just to the left of the
> elderly persons, I observed the suspect immediately move
> away from the elderly people.  The suspect was initially
> facing me.   As the officers in my squad announced our
> presence by yelling police, police, I ordered the suspect
> to show his hands.  The suspect then turned to the right
> and began to move towards the kitchen which was towards
> the back of the house.  As he turned towards the kitchen,
> he kept his hands in his waist band [sic] and looked over
> his left shoulder.  While running towards the kitchen, I
> advanced forward towards the suspect as he continued to
> move away ignoring my commands.  As I came through the
> living room and made my way towards the kitchen, I used
> the lighting system on my AR-15 to illuminate the
> suspect.  The suspect then reached the threshold of the
> kitchen and quickly moved to the left out of my view.  At
> this point fearing for my life and the lives of my squad
> members, I quickly moved my safety switch from "safe" to
> the "fire" position.  I began to look for my first point
> of cover and concealment along the left side of the
> dining room.   As I moved forward, the suspect then
> quickly came back out into my view turning towards me
> which was to his left as if he was going to engage me.
> He started to move his hands from his waistband in a very
> fast movement as if pulling a weapon.   Fearing for my
> life, I immediately raised my AR-15 from the low ready to
> the ready position and immediately engaged the suspect.
> I shot my AR-15 one time and the suspect immediately fell
> to the ground back behind the wall on the other side of
> the threshold.  I posted up on the opposite side of the
> wall and all I could see were the suspect's legs moving
> around on the ground.[9]

After confirming that Plaintiff Bernard had been shot, Defendant

Rodriguez stood over Plaintiff and "covered down on the room" while

---

[9]     Doc. 34-3, Ex. C to Defs.' Mot. for Summ. J., HPD Witness Statement
of Def. Rodriguez pp. 1-2 (unnumbered); see also Doc. 35-1, Ex. 1 to Pls.' Resp.
to Defs.' Mot. for Summ. J., Dep. of Def. Rodriguez pp. 12-13, 17-22, 28.

the other members of the squad cleared the rest of the house.[10]
When the squad cleared the house, Defendant Rodriguez moved
Plaintiff Bernard and checked his waistband but did not find a
weapon.[11]   Other officers administered first aid to Plaintiff
Bernard, and Defendant Rodriguez left the house.[12]

Plaintiff Bernard testified that, at the time the officers
came through the front door, he was already walking toward the
kitchen and turned around as the officers entered.[13]  He did not
possess a weapon.[14]  In his words, "When they said 'freeze,' I threw
my hands up and that's when I got shot, so I really couldn't see
too much, because soon as I turned around, they said 'freeze,' I
turned around and I threw my hands up and they shot me."[15]  The shot
threw Plaintiff Bernard backwards into a door between the dining
room and the kitchen and breaking it.[16]  Plaintiff Bernard could
only remember that, after being shot, he was turned over by an

---

[10]     Doc. 35-1, Ex. 1 to Pls.' Resp. to Defs.' Mot. for Summ. J., Dep. of
Def. Rodriguez pp. 23-29; see also Doc. 34-3, Ex. C to Defs.' Mot. for Summ. J.,
HPD Witness Statement of Def. Rodriguez p. 2 (unnumbered).

[11]     Doc. 34-3, Ex. C to Defs.' Mot. for Summ. J., HPD Witness Statement
of Def. Rodriguez p. 2 (unnumbered).

[12]     Id.; Doc. 35-1, Ex. 1 to Pls.' Resp. to Defs.' Mot. for Summ. J.,
Dep. of Def. Rodriguez p. 33.

[13]     See Doc. 34-7, Ex. F to Defs.' Mot. for Summ. J., Dep. of Pl. Bernard
pp. 26, 27.

[14]     Id. p. 74.

[15]     Id. p. 28.

[16]     See id. pp. 29, 31-32.

4

officer in an attempt to put on handcuffs.[17]  Plaintiff Bernard lost consciousness and did not recall anything that transpired after that for the next two and one-half months.[18]

Plaintiff Gonsoulin, who is Plaintiff Bernard's mother, said that she and her husband were sitting in chairs in the living room and her granddaughter was in a bedroom when the officers entered the front door.[19]  She heard a shot "almost instantly" but could not see Plaintiff Bernard at the time.[20]  She jumped up and said, "They shot Dunner," referring to Plaintiff Bernard by a nickname.[21]  An officer "put the gun in [her] face and told [her] to shut up and sit down."[22]

The officers then escorted Plaintiff Gonsoulin, her husband, and her granddaughter outside where uniformed officers separated them.[23]  Plaintiff Gonsoulin was later place in a police vehicle where she remained for "quite a long time."[24]  Plaintiff Gonsoulin told the officers that she needed to use a restroom but was told

---

[17]    See id. p. 33.

[18]    See id. pp. 33, 35-37.

[19]    See Doc. 34-9, Ex. H to Defs.' Mot. for Summ. J., Dep. of Pl. Gonsoulin p. 10.

[20]    Id. pp. 12-13.

[21]    Id. p. 12.

[22]    Id.

[23]    See id. pp. 13-15.

[24]    Id. p. 16.

that she could not and was asked to wait until she arrived at the police station downtown.[25]  Plaintiff Gonsoulin was not able to wait and urinated and defecated on herself while in the back of the police vehicle.[26]  The officers took Plaintiff Gonsoulin out of the vehicle.[27]  One officer told Plaintiff Gonsoulin that she would need to wait to clean up until she arrived downtown, but, after Plaintiff Gonsoulin refused to sit back down in the police vehicle, another officer went into the residence and retrieved clothes for Plaintiff Gonsoulin.[28]  That officer escorted Plaintiff Gonsoulin to a neighbor's house to change clothes.[29]

Plaintiff Gonsoulin was taken downtown where she provided a statement.[30]  At the police station, Plaintiff Gonsoulin was given her medication and was examined by paramedics who recommended transportation to a hospital.[31]  Plaintiff Gonsoulin refused.[32]

Meanwhile, the warrant squad turned the scene over to

---

[25]     See id. pp. 18-19.

[26]     See id. p. 19.

[27]     See id.

[28]     See id. pp. 19-20.

[29]     See id. p. 20.

[30]     See id. pp. 20, 23-32.

[31]     See id. pp. 36-37.

[32]     See id. p. 37.

Narcotics Squad 15, which performed the narcotics search.[33]   The search of the residence recovered 122.42 grams of phencyclidine (PCP), 1.02 grams of marijuana, a shotgun, and a semi-automatic handgun.[34]   Plaintiff Bernard was charged with possession with intent to deliver a controlled substance.[35]

**B.   Procedural Background**

On March 19, 2015, Plaintiffs filed this action against the City of Houston ("City"), the Houston Police Department ("HPD"), and multiple unidentified police officers, asserting violations of the Fourth and Fourteenth Amendment freedoms from excessive force and failure to protect and raising state claims of assault and battery, intentional infliction of emotional distress ("IIED"), negligence, and malicious prosecution.[36]   On June 3, 2015, the City answered, listing many affirmative defenses, and HPD filed a motion to dismiss.[37]   On June 24, 2015, Plaintiffs amended their complaint and omitted HPD from the list of defendants.[38]

On January 7, 2015, Plaintiffs amended their complaint and

---

[33]    See Doc. 34-6, Ex. E to Defs.' Mot. for Summ. J., Supplemental Report by Narcotics Squad 15.

[34]    See id.

[35]    See Doc. 34-8, Ex. G to Defs.' Mot. for Summ. J., Information on Possession Charge.

[36]    See Doc. 1, Pls.' Orig. Compl.

[37]    See Doc. 8, Def. City's Ans.; Doc. 9, HPD's Mot. to Dismiss.

[38]    See Doc. 11, Pls.' 2$^d$ Am. Compl.  After Plaintiffs dropped HPD as a party to the lawsuit, the court denied HPD's Motion to Dismiss as moot.  See Doc. 26, Mem. & Recommendation Dated Nov. 19, 2015; Doc. 27, Ord. Dated Dec. 16, 2015.

named HPD Officers Rodriguez, Eduardo Medrano, Gerald Goines, Jr., ("Goines"), Ciro Olivares, William Davis, Shanta Morton, and Steven Bryant (collectively "Defendant Officers") in their individual capacities as defendants.[39]  Plaintiffs indicated that they expected to discover the names of other police officers who were involved in the incident and intended to seek leave to amend to add those individuals as defendants.[40]

Against Defendant Officers, Plaintiff Bernard alleged violations of the constitutional rights to be free from excessive force, false arrest, denial of due process, and failure to intervene.[41]  Plaintiff Bernard also alleged that Defendant Officers conspired to violate his constitutional rights.[42]  In addition to the federal claims, Plaintiff Bernard alleged state claims of false imprisonment, malicious prosecution, assault and battery, IIED, and negligence against Defendant Officers.[43]  Plaintiff Gonsoulin alleged state law claims of false imprisonment, assault and battery, IIED, and negligence against Defendant Officers.[44]

Plaintiffs pled Defendant City's direct liability for the

---

[39]   See Doc. 28, Pls.' 3rd Am. Compl. p. 2.

[40]   See id.

[41]   See id. pp. 4-7.

[42]   See id. pp. 6-7.

[43]   See id. pp. 5, 7-10.

[44]   See id.

8

state claim of negligent hiring, retention, supervision, and control and indirect liability for Defendant Officers' negligent actions in violation of state law.[45]  Plaintiffs sought compensatory and punitive damages as well as attorneys' fees and court costs.[46]  On February 12, 2016, and March 29, 2016, respectively , Defendants City and Officers filed their answers to Plaintiffs' third amended complaint and raised numerous defenses.[47]

On July 21, 2016, Defendants filed the pending motion for summary judgment.[48]  Plaintiffs timely filed a response.[49]

## II.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be

---

[45]    See id. pp. 9-10.

[46]    See id. pp. 10-11.

[47]    See Doc. 29, Def. City's Ans. to Pls.' 3rd Am. Compl.; Doc. 31, Def. Officers' Ans. to Pls.' 3rd Am. Compl.

[48]    See Doc. 34, Defs.' Mot. for Summ. J.

[49]    See Doc. 35, Pls.' Resp. to Defs.' Mot. to Dismiss.

genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  The movant may meet this burden by demonstrating an absence of evidence in support of one or more elements of the case for which the nonmovant bears the burden of proof.  See Celotex Corp., 477 U.S. at 322; Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1074 (5th Cir. 1997).

If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute.  Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).

### III. Analysis

Defendants moved for summary judgment in their favor on all of Plaintiffs' claims. In their response, Plaintiffs agreed to dismiss as moot the following claims: conspiracy to violate constitutional rights, failure to intervene, and assault and battery.[50] Plaintiffs also agreed to dismiss any remaining John Doe defendants.[51]

The court addresses the parties' arguments by claim, beginning with the remaining constitutional claims of excessive force, false arrest, and denial of due process. The court then addresses the remaining state claims of false imprisonment, malicious prosecution, IIED, negligence, and negligent hiring, retention, supervision, and control.

## A.  Constitutional Claims

A plaintiff can establish a prima-facie case under 42 U.S.C. § 1983 ("Section 1983")[52] for the deprivation of civil rights by establishing: (1) a violation of a federal constitutional or statutory right; and (2) that the violation was committed by an

---

[50]    See Doc. 35, Pls.' Resp. to Defs.' Mot. for Summ. J. pp. 4-5.

[51]    See id. p. 5.

[52]    The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

individual acting under the color of state law.  <u>Doe v. Rains Cty.</u> <u>Indep. Sch. Dist.</u>, 66 F.3d 1402, 1406 (5th Cir. 1995).  The statute creates no substantive rights but only provides remedies for deprivations of rights created under federal law.  <u>Graham v.</u> <u>Connor</u>, 490 U.S. 386, 393-94 (1989).

Government officials are entitled to qualified immunity from liability for civil damages "unless [(1)] the official violated a statutory or constitutional right [(2)] that was clearly established at the time of the challenged conduct."  <u>Reichle v.</u> <u>Howards</u>, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012)(citing <u>Ashcroft</u> <u>v. al-Kidd</u>, 563 U.S. 731, 735 (2011)).  Courts have discretion to determine in which order the two prongs are considered.  <u>al-Kidd</u>, 563 U.S. at 735.  Qualified immunity protects an officer regardless of whether the error was "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  <u>Pearson v.</u> <u>Callahan</u>, 555 U.S. 223, 231 (2009)(quoting <u>Groh v. Ramirez</u>, 540 U.S. 551, 567 (2004)).  By pleading qualified immunity in good faith, a summary judgment movant shifts the burden to the nonmovant to rebut the movant's assertion.  <u>Brumfield v. Hollins</u>, 551 F.3d 322, 326 (5th Cir. 2008).

Plaintiffs alleged violations of the following constitutional rights: (1) Fourth/Fourteenth Amendment protection against excessive force; (2) Fourth/Fourteenth Amendment protection against false arrest; and (3) Fifth/Fourteenth Amendment protection against

the denial of due process.

### 1. Excessive Force

The Fourth Amendment, applied to state actors through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In order to establish an excessive-force claim, a plaintiff must show: (1) an injury; (2) that resulted directly and only from the use of force that was excessive; and (3) the force used was unreasonable. Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011)(citing Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007)).

The particular context factors into whether the officer acted reasonably in terms of the amount of force deployed. See Tarver v. City of Edna, 410 F.3d 745, 751-53 (5th Cir. 2005). "The objective reasonableness of the force . . . depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible." Collier v. Montgomery, 569 F.3d 214, 218-19 (5th Cir. 2009)(quoting Bush v. Strain, 513 F.3d 492, 501 (5th Cir. 2008)). An officer may use deadly force if he "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Tenn. v. Garner, 471 U.S. 1, 11 (1985).

Reasonableness considerations regarding the need for and the amount of force necessary include whether the suspect posed an

immediate threat to the officer or to the public and whether the suspect was actively resisting arrest or attempting to evade arrest. <u>Collier</u>, 569 F.3d at 219. Reasonableness is judged from the perspective of a reasonable officer on the scene, not in hindsight. <u>Ramirez v. Knoulton</u>, 542 F.3d 124, 128 (5th Cir. 2008). In judging an officer's actions, the court must recognize the difficulty of making split-second judgment calls under high pressure conditions and accord the officer appropriate latitude. <u>Graham</u>, 490 U.S. at 396-97.

Defendants contend that the force used against Plaintiff Bernard was not excessive under the circumstances, relying on the testimony of Defendant Rodriguez.   Plaintiffs' live pleading collectively accused Defendant Officers of using excessive force, but their response to Defendants' motion clarifies that the force they assert was excessive was that used by Defendant Rodriguez in shooting Plaintiff Bernard.

To begin with, the contours of the right to be free from excessive force were well defined by pre-existing law on the date of Plaintiff Bernard's shooting. <u>See, e.g.,</u> <u>Graham</u>, 490 U.S. at 392-99; <u>Garner</u>, 471 U.S. at 7-12. In the absence of any question as to the state of the law, Defendant Rodriguez is not entitled to qualified immunity if his actions were not objectively reasonable.

Plaintiff Bernard and Defendant Rodriguez's accounts of the incident at issue lend themselves to two significantly different

14

fact scenarios, either of which is supported by sufficient evidence to convince a reasonable jury of that version's veracity. According to Defendant Rodriguez, Plaintiff Bernard took off running when the officers entered the residence, kept his hands in the vicinity of his waistband, continued to move out of view, and suddenly turned back quickly moving his hands from his waistband as if pulling out a weapon.[53]  According to Plaintiff Bernard, he was moving toward the other room as the officers entered the residence, stopped, raised his hands in the air, turned around to face Defendant Rodriguez, and possessed no weapon.

Only under the circumstances described by Defendant Rodriguez's account would the use of deadly force be reasonable. No reasonable officer faced with conduct described by Plaintiff Bernard would perceive a threat of serious physical harm; whereas, an officer pursuing an individual who was evading the officer and who quickly turned around while pulling his hands from his waistband reasonably could perceive a threat that the individual possessed a weapon that might be used against the officer. This significant difference in the evidentiary accounts is not susceptible to resolution on summary judgment. Plaintiffs presented sufficient evidence to raise a fact dispute on the constitutionality of Defendant Rodriguez's action. Therefore, he

---

[53]    The court's description of the testimony here is not intended to suggest that either of these versions is accurate or that the two are the only possible ways to interpret the testimony. The court provides these incompatible accounts only to illustrate the significance of the disputed facts.

is not entitled to qualified immunity on summary judgment.  The credibility of the witnesses, the combination of facts believed by the jury, and the inferences draw from the testimony necessarily will all factor into the jury's conclusions.

Summary judgment should not be granted on Plaintiff Bernard's excessive-force claim.

### 2.   False Arrest

When bringing a claim for false arrest in violation of the Fourth Amendment, a plaintiff must show that the officer did not have probable cause to arrest him.  See Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001) (stating that the constitutional tort of false arrest requires "a showing of no probable cause").  Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." United States v. Levine, 80 F.3d 129, 132 (5th Cir. 1996).

Defendants argue that Defendant Officers were not attempting to arrest Plaintiff Bernard at the time of his injury and that, although Plaintiff Bernard "may have been considered 'in custody' during his initial admission at Ben Taub [hospital,] he was never physically arrested and held in any jail" and was allowed to post a bond on the charges that were filed against him.[54]

---

[54]     Doc. 34, Defs.' Mot. for Summ. J. p. 11.

16

In the live pleading, Plaintiff Bernard alleged that "Defendant Officers unlawfully detained and falsely arrested [him] without legal justification or probable cause."[55]  In Plaintiffs' response to Defendants' motion for summary judgment, they abandon the allegation that the arrest lacked probable cause and present a new theory of false arrest, contending that "[Plaintiff] Bernard was not free to move freely away from the barrel of Defendant Rodriguez['s] gun" and that this "use of authority [was] an arrest or detention."[56]  Plaintiff Bernard offers no argument and points to no evidence of any other officer's involvement in the alleged arrest.  Plaintiff Bernard also fails to provide any legal authority that supports this theory.

Regardless of whether holding a suspect at gunpoint can implicate the constitutional right to be free from false arrest, neither version of the facts would support a finding that Defendant Rodriguez held Plaintiff Bernard at gunpoint.  Rather, the evidence shows that Defendant Rodriguez pointed his weapon at Plaintiff Bernard, immediately shooting and injuring him.  The court discerns no constitutional concern separate from whether Defendant Rodriguez's use of force was excessive under the circumstances, as discussed above.

Summary judgment should be granted on Plaintiff Bernard's

---

[55]     Doc. 28, Pls.' 3rd Am. Compl. p. 4.

[56]     Doc. 35, Pls.' Resp. to Defs.' Mot. for Summ. J. p. 8 (unnumbered).

17

false-arrest claim.

### 3. Due Process

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Md., 373 U.S. 83, 87 (1963). "Under Brady, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police.'" United States v. Buck, 847 F.3d 267, 273 (5th Cir. 2017)(quoting Strickler v. Greene, 527 U.S. 263, 281 (1999)). In order to prove a Brady violation, the plaintiff must prove that the withheld evidence was exculpatory or impeaching and that prejudice ensued. Id.

Defendants argue that Plaintiffs' "allegations of hiding exculpatory evidence do not apply to any of the individuals named as defendants" because Defendant Officers did not conduct the search and did not interview the occupants of the residence.[57] They also contend that Plaintiffs cannot point to any untrue statements about the drugs in the reports from the incident, and, even if they could, Brady does not extend to false statements made by police officers to the prosecutor. Brady also does not apply, Defendants argue, because Plaintiff Bernard's charges were dismissed prior to trial.

---

[57]    Doc. 34, Defs.' Mot. for Summ. J. p. 13.

In their live pleading, Plaintiffs alleged that Defendant Officers hid exculpatory evidence by "fail[ing] to tell the district attorney that drugs were not found during the search" and "generat[ing] an offense report that falsely indicated that drugs were found."[58]  In their response to Defendants' motion, Plaintiffs narrow their position to allegations that Defendant Officers failed to inform the district attorney that they found no illegal items on Plaintiff Bernard's person.  In support, Plaintiffs point to the case-transactions report for Plaintiff Bernard's criminal case that listed Defendant Goines as complainant.[59]  Plaintiffs argue that any information Defendant Goines gave as "complainant" was necessarily false.[60]

Even if Plaintiffs' allegations stated a <u>Brady</u> violation,[61] at summary judgment, Plaintiffs must produce sufficient evidence to raise a fact issue.  See <u>Stauffer</u>, 741 F.3d at 581 (stating that a

---

[58]    Doc. 28, Pls.' 3rd Am. Compl. p. 6.

[59]    <u>See</u> Doc. 35-4, Ex. 4 to Pls.' Resp. to Defs.' Mot. for Summ. J., Case Transactions.

[60]    Plaintiffs also allege, for the first time, that Plaintiff Gonsoulin's restraint of liberty raised a due-process obligation to protect her and allow her to use the restroom in a manner that was not humiliating and degrading.  This claim was not alleged in the live pleading and is not before the court. Even if it were, Plaintiffs do not point to legal authority suggesting that Plaintiff Gonsoulin's treatment rose to the level of a constitutional violation or to evidence implicating any one of Defendant Officers in her post-shooting treatment.

[61]    The court doubts that Plaintiffs' allegations would constitute a <u>Brady</u> violation.  <u>See, e.g.,</u> <u>United States v. Mmahat</u>, 106 F.3d 89, 94 (5th Cir. 1997), <u>abrogated on other grounds by</u> <u>United States v. Estate of Parsons</u>, 367 F.3d 409 (5th Cir. 2004)(holding that the state has no obligation to provide potentially exculpatory evidence that is in the possession of the defendant).

nonmovant cannot rest on allegations but must respond with evidence of a genuine factual dispute). Plaintiffs' only evidence is a case-transactions report indicating that Defendant Goines was the "complainant." The report did not indicate what information Defendant Goines provided. Plaintiffs point to no summary judgment evidence that Defendant Goines withheld any evidence from the prosecutor, that it was exculpatory or impeaching, or that prejudice ensued. See Buck, 847 F.3d at 273.

Summary judgment should be granted on Plaintiff Bernard's due-process claim.

**B.**   **State Claims**

As a municipality, Defendant City is entitled to the protection of governmental immunity. Mission Consol. Indep. Sch. Dist. v. Garcia, 253 S.W.3d 653, 655 n.2 (Tex. 2008)(stating that municipalities are protected by governmental immunity); see also Tex. Civ. Prac. & Rem. Code § 101.001(3)(B). Texas governmental units enjoy immunity from claims unless Texas has consented to allowing suit. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004). Texas waives immunity for a limited number of situations as described in the TTCA. Mission Consol. Indep. Sch. Dist., 253 S.W.3d at 659 (stating that the TTCA is "the only, albeit limited, avenue for common-law recovery against the government"). Generally, the TTCA waives immunity for property damage, personal injury, and death caused by wrongful acts of

employees if arising from the use of a motor-driven vehicle or from a condition or use of tangible personal or real property.  See Tex. Civ. Prac. & Rem. Code § 101.021.

Defendants argue that Defendant City is protected from the negligence claims by governmental immunity.[62]  They also assert that Plaintiffs cannot produce any evidence that Defendant City's hiring, retaining, training, or supervising of its officers was negligent.

Plaintiffs alleged, in their live pleading under the claim headings of "State Law Claim: Negligence" and "State Law Claim: Negligent Hiring, Retention, Supervision, [a]nd Control," that Defendant City breached its duties to use ordinary care in hiring, training, retaining, supervising, controlling, and disciplining its officers.[63]  Plaintiffs also alleged, under state law, that Defendant City was "liable for the actions of its employees, including its agents and officers, in the negligent actions toward Plaintiff" and was "liable as principal for all torts committed by its agent when acting as its agent."[64]  Plaintiffs presented no arguments on these issues in their responsive brief.

Defendant City carried its initial burden on summary judgment

---

[62]    The pleading did not allege that Defendant City was liable for the intentional torts allegedly committed by Defendant Officers.  As Defendant City notes, no waiver of immunity is available for claims arising out of any intentional tort.  See Tex. Civ. Prac. & Rem. Code § 101.057.

[63]    Doc. 28, Pls.' 3rd Am. Compl. pp. 9-10.

[64]    Id. pp. 9, 10.

of raising governmental immunity.[65]   Because Plaintiffs failed to
present evidence that they suffered any harm arising from actions
of the type for which the TTCA waives governmental immunity, these
state claims cannot be maintained.[66]   See Stauffer, 741 F.3d at 581
(stating that a nonmovant cannot rest on allegations but must
respond with evidence of a genuine factual dispute).

The Texas Tort Claims Act[67] ("TTCA") also provides:

> If a suit is filed against an employee of a governmental
> unit based on conduct within the general scope of that
> employee's employment and if it could have been brought
> under this chapter against the governmental unit, the
> suit is considered to be against the employee in the
> employee's official capacity only.

Tex. Civ. Prac. & Rem. Code § 101.106(f).   The TTCA defines "scope
of employment" as "the performance for a governmental unit of the
duties of an employee's office or employment that includes being in
and about the performance of a task lawfully assigned to an
employee by competent authority."   Tex. Civ. Prac. & Rem. Code §
101.001(5).   The action "could have been brought" under the TTCA
against the governmental unit "regardless of whether the [TTCA]

---

[65]   Defendant City also argues that Plaintiffs cannot impose liability
on it for the alleged constitutional violations.   As the court understands
Plaintiffs' pleading, they did not assert municipal liability under Section 1983.
They neither alleged nor produced evidence of any municipal policy or custom of
Defendant City that was the moving force behind the alleged constitutional
violations as required to impose municipal liability. See World Wide Street
Preachers Fellowship v. Town of Columbia, 591 F.3d 747, 753 (5th Cir.
2009)(citing Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002)).

[66]   The court need not consider Defendant City's alternative contention
that Plaintiff failed to provide it with notice required by the TTCA.

[67]   See Tex. Civ. Prac. & Rem. Code §§ 101.001-101.109.

waives immunity from suit."  <u>Franka v. Velasquez</u>, 332 S.W.3d 367, 385 (Tex. 2011).  That is to say, section 101.106(f) of the TTCA applies to all common-law tort theories.  <u>Franka</u>, 332 S.W.3d at 369.

Defendants argue that all of Plaintiffs' state claims are barred by official immunity and governmental immunity.  In their live pleading, Plaintiffs alleged false imprisonment, malicious prosecution, IIED, and negligence against Defendant Officers. Plaintiffs' response addresses the merits of the false-imprisonment, malicious-prosecution, and IIED claims but offers no response on the negligence claim.  Plaintiffs' response does not address the application of the TTCA to these claims.

As to all four of the remaining state claims, the conduct about which Plaintiffs complained occurred while Defendant Officers, who were indisputably employees of Defendant City,[68] were "being in and about the performance" of executing a warrant or "other tasks lawfully assigned" to them.  <u>See</u> Tex. Civ. Prac. & Rem. Code § 101.001(5).  All four state claims fall under the TTCA as common-law tort claims.  Therefore, section 101.106(f) of the TTCA requires that they be dismissed.

Summary judgment should be granted on all state claims alleged against Defendants City and Officers.

---

[68]    <u>See</u> Doc. 28, Pls.' 3rd Am. Compl. p. 2 ("Defendant Officers are and were at the time of the events complained of herein employed by the City of Houston as police officers.").

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants'
motion be **GRANTED IN PART AND DENIED IN PART**.  If this Memorandum
and Recommendation is adopted, the only remaining claim will be
Plaintiff Bernard's claim of excessive force pursuant to Section
1983.

The Clerk shall send copies of this Memorandum and
Recommendation to the respective parties who have fourteen days
from the receipt thereof to file written objections thereto
pursuant to Federal Rule of Civil Procedure 72(b) and General Order
2002-13.  Failure to file written objections within the time period
mentioned shall bar an aggrieved party from attacking the factual
findings and legal conclusions on appeal.

The original of any written objections shall be filed with the
United States District Clerk electronically.  Copies of such
objections shall be mailed to opposing parties and to the chambers
of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 2nd day of March, 2017.

_____
U.S. MAGISTRATE JUDGE

24